UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

AMAZON.COM, INC., et al.,

                  Plaintiffs,

    v.

CHUN WONG, et al.,

                  Defendants.

CASE NO. C19-0990JLR

ORDER

## I.    INTRODUCTION

Before the court is Plaintiffs Amazon.com, Inc. ("Amazon") and Nite Ize, Inc.'s ("Nite Ize") (together, "Plaintiffs") motion for entry of default judgment and for a permanent injunction against Defendants Chun Wong (also known as Chun Hsi-Wong), Kevin Bao, and Duan Bo Jiang (together, "Defendants"). (Mot. (Dkt. # 117); Reply (Dkt. # 123).) Mr. Wong opposes Plaintiffs' calculation of damages and request for a

//

//

1   permanent injunction.  (Resp. (Dkt. # 129-1).[1])  Neither Mr. Bao nor Mr. Jiang have

2   appeared in this action or responded to Plaintiffs' motion.  (*See generally* Dkt.)  The

3   court has reviewed Plaintiffs' motion, the relevant portions of the record, and the

4   governing law.  Being fully advised,[2] the court GRANTS in part and DENIES in part

5   Plaintiffs' motion for entry of default judgment and for a permanent injunction.

6               **II.     BACKGROUND**

7       This action arises out of Defendants' alleged operation of selling accounts on

8   Amazon.com through which they sold counterfeit Nite Ize STEELIE products.  (*See* Am.

9   Compl. (Dkt. # 31) ¶¶ 4 (explaining that the "STEELIE ecosystem" is a "family of

10  products that make mounting and viewing mobile devices just about anywhere a snap"),

11  36 (describing the two Nite Ize registered trademarks at issue in this case), 38 (listing the

12  relevant Amazon selling accounts).)  Plaintiffs filed this case on June 26, 2019, against

13  Mr. Wong and ten other named defendants, most of which turned out to be aliases that

14  Mr. Wong used to create Amazon selling accounts.  (*See* Compl. (Dkt. # 1); Ans. (Dkt.

15  # 41) ¶¶ 15-19 (admitting that Mr. Wong operated selling accounts under the names

16  James Lee, Steve Max, Zack Grey, Jeffrey Hall, and Derek Wilson); Rainwater Decl.

17

18      [1] The original version of Mr. Wong's response contained erroneous citations.  (*See* Orig.
19  Resp. (Dkt. # 122); 1/18/24 Min. Order (Dkt. # 125) (identifying those citations).)  The court
    ordered Mr. Wong to file a praecipe attaching the corrected response and gave Plaintiffs leave to
20  file an optional supplemental reply addressing the corrected response.  (*See* 1/19/24 Min. Order
    (Dkt. # 127); Praecipe (Dkt. # 129) (attaching the corrected response).)  Plaintiffs did not file a
    supplemental reply.  (*See* Dkt.)

21      [2] Neither Plaintiffs nor Mr. Wong have requested oral argument (*see* Mot. at 1; Resp. at
22  1), and the court finds oral argument unnecessary to its disposition of the motion, *see* Local
    Rules W.D. Wash. LCR 7(b)(4).

ORDER - 2

1    (Dkt. # 118) ¶ 3, Ex. B ("Wong Interrogatories") at 4 (same); Resp. at 3 (acknowledging

2    that Mr. Wong used "false credentials, including aliases, forged bank records, and

3    fabricated invoices" to create these accounts).)  Plaintiffs amended their complaint on

4    February 23, 2021, to add Mr. Bao and Mr. Jiang as defendants.  (*See* Am. Compl.

5    ¶¶ 21-22.)  According to Plaintiffs, Defendants sold hundreds of thousands of dollars'

6    worth of products bearing counterfeit versions of Nite Ize's registered trademarks

7    through their Amazon selling accounts between 2017 and 2019.  (*See* Haskel Decl. (Dkt.

8    # 120) ¶¶ 7, 11, 15 (summarizing the sales made through Defendants' selling accounts).)

9         Only Mr. Wong has appeared in this matter.  (*See* Dkt.)  On July 9, 2023, the court

10   entered default against Mr. Wong as a sanction for his willful failure to comply with the

11   court's discovery orders and cooperate in the discovery process.  (7/9/23 Order (Dkt.

12   # 107); *see also* 7/12/23 Entry of Default (Dkt. # 108).)  The court entered default against

13   Mr. Jiang and Mr. Bao on November 14, 2021.  (11/4/21 Entry of Default (Dkt. # 50).)[3]

14                          **III.    ANALYSIS**

15        Below, the court sets forth the relevant legal standards and then evaluates

16   Plaintiffs' motion for entry of default judgment and for a permanent injunction.

17   //

18   //

19   //

20

21

22

---

[3] The court has either dismissed or entered default against all other named Defendants. (*See* 6/4/21 Entry of Default (Dkt. # 38) (entering default against aliases Zack Grey, Jeffrey Hall, Adam Jones, Jacky Likens, Steve Max, Jacob Smith, Derek Wilson, and James Lee); 8/24/22 Order (Dkt. # 81) (dismissing Hu Nan Dong Limited without prejudice); 11/16/22 Order (Dkt. # 89) (dismissing Shenzhen Haiming Limited and Does 1-10 without prejudice).)

**A.     Legal Standard**

Federal Rule of Civil Procedure 55(b)(2) authorizes the court to enter default judgment against a defaulted defendant upon the plaintiff's motion.  Fed. R. Civ. P. 55(a), (b)(2).  After default is entered, well-pleaded factual allegations in the complaint, except those related to damages, are considered admitted and are sufficient to establish a defendant's liability.  *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) (citing *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)).

Entry of default judgment is left to the court's sound discretion.  *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  In exercising its discretion, the court considers the seven "*Eitel* factors":  (1) the possibility of prejudice to the plaintiff if relief is denied; (2) the substantive merits of the plaintiff's claims; (3) the sufficiency of the claims raised in the complaint; (4) the sum of money at stake in relationship to the defendant's behavior; (5) the possibility of a dispute concerning material facts; (6) whether default was due to excusable neglect; and (7) the preference for decisions on the merits when reasonably possible.  *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  If the court determines that default judgment is appropriate, it must then determine the amount and character of the relief that should be awarded.  *See TeleVideo*, 826 F.2d at 917-18.

**B.     Jurisdiction**

As a preliminary matter, a court evaluating a motion for default judgment "has an affirmative duty to look into its jurisdiction over both the subject matter and the parties." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999)).  First, the court has federal question subject matter jurisdiction based on Plaintiffs' Lanham Act claims for trademark

1    infringement, false designation of origin, and false advertising.  *See* 15 U.S.C. § 1121(a)

2    (providing district courts original jurisdiction over actions arising under the Lanham

3    Act); 28 U.S.C. § 1331 (providing district courts original jurisdiction over civil actions

4    arising under the laws of the United States); 28 U.S.C. § 1338 (providing district courts

5    original jurisdiction over civil actions arising under any federal statute relating to

6    trademarks).  Second, the court has personal jurisdiction over Mr. Wong because he

7    answered Plaintiffs' amended complaint and has never disputed that the court has

8    personal jurisdiction over him.  *See Benny v. Pipes*, 799 F.2d 489, 492 (9th Cir. 1986),

9    *amended*, 807 F.2d 1514 (9th Cir. 1987) ("A general appearance or responsive pleading

10   by a defendant that fails to dispute personal jurisdiction will waive any defect in service

11   or personal jurisdiction."); (*see* Ans.; *see generally* Dkt.).  Third, the court has personal

12   jurisdiction over all Defendants because (1) taking the factual allegations in the complaint

13   as true, Defendants transacted business using a Washington state company as its sales

14   platform, reached out to do business with Washington residents through that platform,

15   and sold counterfeit products to Washington residents; and (2) Plaintiffs' claims arose

16   from these contacts with Washington state.  (Am. Compl. ¶ 25); *see Expensify, Inc. v.*

17   *Swappoint AG*, No. 22-CV-05720-LB, 2023 WL 6323103, at *4 (N.D. Cal. Sept. 28,

18   2023) ("Specific jurisdiction exists when the suit arises out of or relates to the defendant's

19   contacts with the forum." (citing *Walden v. Fiore*, 571 U.S. 277, 284 (2014))).  Having

20   determined that it has jurisdiction over the subject matter and the parties, the court

21   proceeds to evaluate the *Eitel* factors.

22

1    **C.    The *Eitel* Factors**

2          Plaintiffs argue that the *Eitel* factors favor entry of default judgment against all

3    three Defendants.  (*See* Mot. at 6-12.)  Although Mr. Wong cites *Eitel* in his opposition

4    brief, he does not address the *Eitel* factors except to assert, without further explanation,

5    that "the facts alleged [in Plaintiffs' amended complaint], even if taken as true, do not

6    conclusively establish the claims asserted."  (Resp. at 2.)  The court determines that entry

7    of default judgment on Nite Ize's Lanham Act claims for trademark infringement and

8    false designation of origin is warranted because the *Eitel* factors weigh in favor of default

9    judgment.  The court, however, denies Amazon's motion for entry of default judgment on

10   its false advertising claim because the amended complaint fails to plausibly allege

11   Defendants' liability on that claim.

12         1.    Possibility of Prejudice to Plaintiffs

13         Under the first *Eitel* factor, the court considers whether the plaintiff will suffer

14   prejudice if default judgment is not entered.  *See PepsiCo, Inc., v. Cal. Sec. Cans*, 238 F.

15   Supp. 2d 1172, 1177 (C.D. Cal. 2002).  Without default judgment, Plaintiffs will suffer

16   prejudice because they will "be denied the right to judicial resolution" of their claims and

17   will be "without other recourse for recovery."  *Elektra Ent. Grp. Inc. v. Crawford*, 226

18   F.R.D. 388, 392 (C.D. Cal. 2005).  Thus, the first *Eitel* factor weighs in favor of entering

19   default judgment.

20         2.    Substantive Merits and Sufficiency of the Complaint

21         "The second and third *Eitel* factors—the substantive merits of the plaintiff's claim

22   and the sufficiency of the plaintiff's complaint—are often analyzed together."  *Curtis v.*

1  *Illumination Arts, Inc.*, 33 F. Supp. 3d 1200, 1211 (W.D. Wash. 2014) (citing *PepsiCo*,

2  238 F. Supp. 2d at 1175).  For these factors to weigh in favor of default judgment, the

3  complaint's allegations must state a claim for relief.  *See Danning v. Lavine*, 572 F.2d

4  1386, 1388 (9th Cir. 1978).  A complaint satisfies this standard when it "contain[s]

5  sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

6  face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*,

7  550 U.S 544, 570 (2007)).  At the default judgment stage, the court "must take the

8  well-pleaded factual allegations [in the complaint] as true" but "necessary facts not

9  contained in the pleadings, and claims which are legally insufficient, are not established

10 by default."  *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992); *see*

11 *also DIRECTV, Inc. v. Huynh*, 503 F.3d 847, 854 (9th Cir. 2007) (declining to take as

12 true "allegations that parrot the language of" the relevant statute).  The court cannot enter

13 default judgment if the complaint fails to state a claim.  *See Moore v. United Kingdom*,

14 384 F.3d 1079, 1090 (9th Cir. 2004).

15       Plaintiffs assert that they have established Defendants' liability under the Lanham

16 Act for trademark infringement, false designation of origin, and false advertising.[4]  (Mot.

17 at 6-10.)  Mr. Wong argues that Plaintiffs have not met their "burden to prove their

18 claims" and that the facts they allege in their amended complaint "do not conclusively

19 establish the claims asserted."  (Resp. at 2.)  He does not, however, identify the claims he

20

21

22       [4] Plaintiffs have agreed to voluntarily dismiss their state-law claims for breach of contract
and for civil conspiracy.  (Mot. at 3 n.2.)

1  contends are legally insufficient or explain why he believes that Plaintiffs have failed to

2  state their claims.  (*Id.*)  The court reviews each claim in turn.

3          *a.*     *Trademark Infringement*

4          First, Nite Ize seeks entry of default judgment on its claim that Defendants

5  infringed its trademarks in violation of the Lanham Act, 15 U.S.C. § 1114.  (Mot. at 6-8;

6  *see* Am. Compl. ¶¶ 78-86.)  To state a claim for trademark infringement under

7  § 1114(1)(a), Nite Ize must plausibly allege that Defendants used:

8          (1) a reproduction, counterfeit, copy or colorable imitation of [the] plaintiff's
           registered  trademark,  (2)  without  its  consent,  (3)  in  commerce,  (4)  in
9          connection with the sale, offering for sale, distribution or advertising of any
           goods, (5) where such use is likely to cause confusion, or to cause a mistake
10         or to deceive.

11 *Amazon.com v. Kurth*, No. C18-0353RAJ, 2019 WL 3426064, at *2 (W.D. Wash. July

12 30, 2019) (citing 15 U.S.C. § 1114(1)(a)).  "Likelihood of confusion exists when

13 consumers viewing the mark would probably assume that the goods it represents are

14 associated with the source of a different product identified by a similar mark."  *KP*

15 *Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 608 (9th Cir.

16 2005).  Courts generally evaluate eight factors to determine whether confusion is likely:

17 "1) the strength of the mark; 2) proximity or relatedness of the goods; 3) the similarity of

18 the marks; 4) evidence of actual confusion; 5) the marketing channels used; 6) the degree

19 of care customers are likely to exercise in purchasing the goods; 7) the defendant's intent

20 in selecting the mark; and 8) the likelihood of expansion into other markets."  *Id*. (citing

21 *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979)).  Where a defendant

22 uses a counterfeit mark, however, courts both within and outside the Ninth Circuit

1    presume a likelihood of consumer confusion.  *See Coach, Inc. v. Pegasus Theater Shops*,

2    No. C12-1631MJP, 2013 WL 5406220, at \*3 (W.D. Wash. Sept. 25, 2013) (compiling

3    cases).  The Lanham Act defines a "counterfeit" as "a spurious mark which is identical

4    with, or substantially indistinguishable from, a registered mark."  *Id.* (citing 15 U.S.C.

5    § 1127).

6           Here, Nite Ize alleges it owns Trademark Reg. No. 4,205,539 for "STEELIE" and

7    Trademark Reg. No. 2,789,303 for "NITE IZE" (together, the "Nite Ize Trademarks")

8    and that it has not "licensed or authorized Defendants to manufacture, import, or sell

9    products bearing the Nite Ize brand."  (Am. Compl. ¶¶ 36, 43; *id.*, Exs. A-B (copies of

10   registration certificates for the Nite Ize Trademarks).)  Nevertheless, Defendants sold,

11   offered for sale, advertised, and distributed counterfeit STEELIE products bearing the

12   Nite Ize Trademarks through their Amazon selling accounts and represented that those

13   products were genuine Nite Ize products.  (*Id.* ¶¶ 38, 43-71 (identifying the selling

14   accounts at issue and describing test purchases of counterfeit STEELIE products made

15   from those accounts); *see also* Todd Decl. (Dkt. # 119) ¶¶ 5-21 (describing test purchases

16   from Amazon selling accounts associated with Mr. Wong and his aliases); *id.* ¶¶ 22-23

17   (describing test purchases from the "porterg" selling account associated with Mr. Jiang

18   and Mr. Bao); *id.* ¶¶ 24-28 (describing test purchases from Amazon selling accounts

19   associated with Mr. Jiang).)  Accepting these allegations as true, the court concludes that

20   it is likely that a reasonable consumer would confuse the products sold through

21   Defendants' selling accounts with Nite Ize's genuine products.  *See Coach, Inc.*, 2013

22   WL 5406220, at \*3.  Therefore, Nite Ize has stated a claim against Defendants for

1   trademark infringement in violation of § 1114(1)(a) and the second and third *Eitel* factors

2   weigh in favor of entry of default judgment on that claim.

3            b.      *False Designation of Origin*

4            Second, Nite Ize and Amazon assert that they are entitled to default judgment on

5   their claims for false designation of origin under 15 U.S.C. § 1125(a).  (Mot. at 8-10.)

6   Plaintiffs did not, however, bring a false designation claim on behalf of Amazon in their

7   amended complaint.  (*See* Am. Compl. ¶¶ 87-95 (alleging a false designation of origin

8   claim only on behalf of Nite Ize; *id.* ¶¶ 78-113 (alleging only claims for breach of

9   contract, false advertising, and civil conspiracy on behalf of Amazon).[5])  Therefore, the

10  court considers only whether Nite Ize has stated a claim for false designation of origin.

11           To state a claim for false designation of origin, Nite Ize must plausibly allege that

12  Defendants:

13           (1) used in commerce (2) any word, false designation of origin, false or
             misleading description, or representation of fact, which (3) is likely to cause
14           confusion or mistake, or to deceive, as to sponsorship, affiliation, or the
             origin of the goods or services in question.

15  *Luxul Tech. Inc. v. Nectarlux, LLC*, 78 F. Supp. 3d 1156, 1170 (N.D. Cal. 2015) (citing

16  *Freecycle Network, Inc. v. Oey*, 505 F.3d 898, 902 (9th Cir. 2007)); 15 U.S.C.

17  § 1125(a)(1)(A).

18

19

20           [5] Amazon attempts to avoid its failure to plead a false designation of origin claim by
    arguing that the complaint satisfies 15 U.S.C. § 1125(a)(1).  (*See, e.g.*, Mot. at 8-9.)  Section
21  1125(a), however, "creates two distinct bases of liability:  false association, § 1125(a)(1)(A), and
    false advertising, § 1125(a)(1)(B)."  *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572
22  U.S. 118, 122 (2014).  The court rejects Plaintiffs' attempt to amend their complaint via their
    motion for default judgment.

1   Nite Ize avers that its trademarks have "come to mean, and are understood by

2   customers, end users, and the public to signify, products from Nite Ize." (Am. Compl.

3   ¶ 89.)  As discussed above, the court takes as true Nite Ize's allegations that Defendants

4   sold counterfeit products on Amazon.com bearing the Nite Ize trademarks and that their

5   use of those trademarks is likely to cause confusion in the marketplace.  (*See supra*

6   § III.C.2.a.)  The court also takes as true Nite Ize's allegation that Defendants engaged in

7   the unauthorized use of Nite Ize's name and imitated Nite Ize's designs in connection

8   with their sale of those counterfeit Nite Ize products.  (Am. Compl. ¶ 90.)  This wrongful

9   conduct, according to Nite Ize, misleads customers and the public regarding the origin

10  and authenticity of products that bear the Nite Ize Trademarks, name, and designs.  (*Id.*

11  ¶ 91.)  Based on all of the foregoing, the court concludes that Nite Ize has stated a claim

12  for false designation of origin and thus the second and third *Eitel* factors weigh in favor

13  of entering default judgment on that claim.

14          *c.      False Advertising*

15          Finally, Amazon alleges that Defendants have engaged in false advertising in

16  violation of § 1125(a).  (Am. Compl. ¶¶ 102-08.)  To state a claim for false advertising,

17  Amazon must plausibly allege:

18          (1) a false statement of fact by the defendant in a commercial advertisement
        about its own or another's product; (2) the statement actually deceived or has
19          the tendency to deceive a substantial segment of its audience; (3) the
        deception is material, in that it is likely to influence the purchasing decision;
20          (4) the defendant caused the false statement to enter interstate commerce;
        and (5) the plaintiff has been or is likely to be injured as a result of the false
21          statement, either by direct diversion of sales from itself to defendant or by a
        lessening of the goodwill associated with its products.

22

1  *Skydive Ariz., Inc. v. Quattrocchi*, 673 F.3d 1105, 1110 (9th Cir. 2012) (quoting

2  *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997)); 15

3  U.S.C. § 1125(a)(1)(B).  To constitute a statement made in a commercial advertisement,

4  the statement must be:

> (1) commercial speech; (2) by the defendant who is in commercial
> competition with the plaintiff; (3) for the purpose of influencing consumers
> to buy defendant's goods or services. While the representations need not be
> made in a "classic advertising campaign," but may consist instead of more
> informal types of "promotion," the representations (4) must be disseminated
> sufficiently to the relevant purchasing public to constitute "advertising" or
> "promotion" within that industry.

9  *Newcal Indus., Inc. v. Ikon Off. Sol.*, 513 F.3d 1038, 1054 (9th Cir. 2008) (citation

10  omitted).  Amazon does not allege that Defendants made false statements in commercial

11  advertisements for the purpose of influencing consumers or that it is in competition with

12  Defendants.  (*See* Am. Compl. ¶¶ 102-08.)  Instead, it alleges that Defendants made false,

13  misleading, and deceptive statements that "were material to *Amazon's* decision to allow

14  them to sell their goods on the Amazon store because Amazon would not have permitted

15  them to sell their goods but for the deceptive acts."  (*Id.* ¶¶ 103-04 (emphasis added).)

16  As a result, Amazon has failed to plausibly allege facts that, taken as true, satisfy the

17  elements of a false advertising claim.  Because Amazon has failed to state a claim for

18  false advertising under § 1125(a)(1)(B), the court denies Amazon's request for entry of

19  default judgment and dismisses its false advertising claim.  *See Moore*, 384 F.3d at 1090

20  (holding that because plaintiff failed to state a claim for relief, he was not entitled to

21  default judgment and dismissal of the claim was proper).

22

1    3.    Sum of Money at Stake

2         Under the fourth *Eitel* factor, "the court must consider the amount of money at

3    stake in relation to the seriousness of [the d]efendant's conduct."  *PepsiCo*, 238 F. Supp.

4    2d at 1176.  Here, Plaintiffs ask the court to award Nite Ize statutory damages of

5    $865,273 against Mr. Wong; $78,682 against Mr. Jiang and Mr. Bao, jointly and

6    severally; and $1,083,567 against Mr. Jiang.  (*See* Mot. at 15-18; *see also* Prop. Order

7    (Dkt. # 121) at 2.)  These amounts are within the range of statutory damages authorized

8    by Congress for the willful use of a counterfeit mark.  *See* 15 U.S.C. § 1117(c)(2)

9    (authorizing the court to award up to $2,000,000 per counterfeit mark); *Derek Andrew*,

10   *Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 702 (9th Cir. 2008) (holding that complaint's

11   willful infringement allegations were deemed true after default); (Am. Compl. ¶¶ 36, 84

12   (alleging Defendants willfully infringed two Nite Ize trademarks)).  The court concludes

13   that Plaintiffs' requested statutory damages are not so unreasonable relative to the

14   seriousness of the conduct alleged in the amended complaint as to weigh against entry of

15   default judgment.

16        4.    Possibility of a Dispute over Material Facts

17        Courts evaluating the fifth *Eitel* factor "consider[] the possibility of dispute as to

18   any material facts in the case."  *PepsiCo*, 238 F. Supp. 2d at 1177.  "When default has

19   been entered, courts find that there is no longer the possibility of a dispute concerning

20   material facts because the court must take the plaintiff's factual allegations as true."

21   *Curtis*, 33 F. Supp. 3d at 1212.  Here, the court has entered default against all three

22   Defendants; Mr. Bao and Mr. Jiang have not responded to the motion for default

1   judgment; and Mr. Wong does not dispute the facts that are material to liability, focusing

2   instead on facts relating to damages. (*See generally* Resp.) The court concludes that the

3   fifth *Eitel* factor weighs in favor of default judgment.

4        5.   Excusable Neglect

5        Under the sixth *Eitel* factor, courts consider the possibility that the defendant's

6   default resulted from excusable neglect. *PepsiCo*, 238 F. Supp. 2d at 1177. Plaintiffs

7   have provided evidence that Defendants were properly served (*see* Service Affs. (Dkt.

8   ## 36 (Mr. Jiang), 39 (Mr. Wong), 40 (Mr. Bao)); the court entered default against Mr.

9   Wong as a sanction for his failure to cooperate with discovery (7/9/23 Order at 17); and

10   there is no evidence in the record that would support a finding that Mr. Bao or Mr.

11   Jiang's failure to answer or respond is the result of excusable neglect. Accordingly, the

12   court concludes that the sixth *Eitel* factor weighs in favor of default judgment.

13        6.   Policy Favoring Decisions on the Merits

14        "Cases should be decided upon their merits whenever reasonably possible." *Eitel*,

15   782 F.2d at 1472. Where, as here, a defendant fails to appear or defend itself in the

16   action, however, the policy favoring decisions on the merits is not dispositive. *PepsiCo*,

17   238 F. Supp. 2d at 1177. Therefore, the court concludes that the seventh *Eitel* factor does

18   not preclude entry of default judgment.

19        In sum, the court concludes that the *Eitel* factors weigh in favor of entry of default

20   judgment in Nite Ize's favor on its trademark infringement and false designation of origin

21   claims. Because Amazon has failed to state a plausible false advertising claim, however,

22   the court denies Amazon's request for entry of default judgment and dismisses that claim.

**D.    Requested Relief**

The court now turns to the issue of remedies.  "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the [complaint]."  Fed. R. Civ. P. 54(c); *see Fong v. United States*, 300 F.2d 400, 413 (9th Cir. 1962).  Defaulting defendants are not deemed to have admitted the facts alleged in the complaint concerning the amount of damages.  *TeleVideo*, 826 F.2d at 917.  Rather, the plaintiff "must 'prove up' the amount of damages that it is claiming."  *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 501 (C.D. Cal. 2003); *see also* Local Rules W.D. Wash. LCR 55(b)(2) (requiring a plaintiff moving for default judgment to submit "a declaration and other evidence establishing [the] plaintiff's entitlement to a sum certain and to any nonmonetary relief sought").  By analogy, the plaintiff must also "prove up" its entitlement to other forms of relief, such as a permanent injunction.  *See Gucci Am., Inc. v. Tyrrell–Miller*, 678 F. Supp. 2d 117, 120-21 (S.D.N.Y. 2008).

1.    Statutory Damages

Under the Lanham Act, a plaintiff may elect whether to recover its actual damages caused by the defendants' use of a counterfeit mark or statutory damages.  15 U.S.C. § 1117(c).  Nite Ize has elected to seek statutory damages.  (Mot. at 12-18; Reply at 2; *see* Am. Compl. at 29 (including an award of statutory damages to Nite Ize in Plaintiffs' prayer for relief).)   If the court finds that a defendant's use of a counterfeit mark was willful, it has discretion to award statutory damages of "not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just."  15 U.S.C. § 1117(c)(2).  Because Plaintiffs' allegation that

1    Defendants willfully infringed the Nite Ize Trademarks is deemed true, the court may

2    award up to $4,000,000 in statutory damages.  (*See* Am. Compl. ¶¶ 36 (describing Nite

3    Ize's two trademarks); 84 (alleging willful infringement)); *Derek Andrew, Inc.*, 528 F.3d

4    at 702.  "[S]tatutory damages may compensate the victim, penalize the wrongdoer, deter

5    future wrongdoing, or serve all those purposes."  *Y.Y.G.M. SA v. Redbubble, Inc.*, 75

6    F.4th 995, 1008 (9th Cir. 2023) (citing *Nintendo of Am., Inc. v. Dragon Pac. Int'l*, 40

7    F.3d 1007, 1011 (9th Cir. 1994)).  The plaintiff, however, "is not entitled to a windfall."

8    *Yelp Inc. v. Catron*, 70 F. Supp. 3d 1082, 1102 (N.D. Cal. 2014) (quoting *Adobe Sys., Inc.*

9    *v. Tilley*, No. C 09-1085 PJH, 2010 WL 309249, at *5 (N.D. Cal. Jan. 19, 2010)).

10   Therefore, courts consider whether the amount of statutory damages requested bears a

11   "plausible relationship to [the p]laintiff's actual damages."  *Id.*

12       Here, Nite Ize seeks a total judgment of $2,027,522:  triple the total sales of

13   counterfeit Nite Ize products Defendants made through their Amazon selling accounts

14   and just over half the maximum statutory damages available in this case.  (Mot. at 15-18);

15   15 U.S.C. § 1117(c)(2).  Specifically, Nite Ize requests an award of statutory damages

16   against Mr. Wong of $865,237 based on his total sales of $288,424.60; against Mr. Jiang

17   and Mr. Bao of $78,682 based on their total sales of $26,227.59 through the "porterg"

18   selling account; and against Mr. Jiang of $1,083,567 based on his total sales of

19   $361,189.09.  (*Id.* at 16-17; Haskell Decl. ¶¶ 7, 11, 15.)  The court grants Nite Ize's

20   request in part.

21       First, the court awards Nite Ize the total amount of statutory damages it requests

22   from Mr. Jiang and Mr. Bao.  The court concludes an award of three times the sales of

1    counterfeit Nite Ize products made through these Defendants' Amazon selling accounts is

2    consistent with the amounts awarded by other courts in this District for similar conduct,

3    proportional to Nite Ize's actual damages, and sufficient to deter Mr. Jiang and Mr. Bao

4    from further willful infringement, but is not so great as to result in a windfall for Nite Ize.

5    *See, e.g.*, *Amazon.com, Inc. v. Sirowl Tech.*, No. C20-1217RSL-JRC, 2022 WL

6    19000499, at *5 (W.D. Wash. Oct. 3, 2022) (awarding statutory damages of three times

7    Defendants' aggregate sales of counterfeit products); *Amazon.com, Inc. v. White*, No.

8    C20-1773JHC, 2022 WL 1641423, at *5 (W.D. Wash. May 24, 2022) (same).

9         The court, however, denies Nite Ize's request for an award of $865,237 against

10   Mr. Wong.  Unlike Mr. Jiang and Mr. Bao, Mr. Wong appeared in this case and has

11   admitted much of his unlawful conduct.  (*See* Ans. ¶¶ 15-19 (admitting that he operated

12   selling accounts under multiple aliases); Wong Interrogatories at 4 (same); Resp. at 3

13   (acknowledging that he used "false credentials, including aliases, forged bank records,

14   and fabricated invoices" to create the selling accounts).)  Because Mr. Wong has largely

15   taken responsibility for his actions, the court concludes that an award of a lower multiple

16   of his total sales than those assessed against Mr. Jiang and Mr. Bao is sufficient to deter

17   him from engaging in similar conduct in the future.  *See Nautilus, Inc. v. Chunchai Yu*,

18   No. CV 10-00624 MMM (MANx), 2011 WL 13213575, at *16 (C.D. Cal. Dec. 19, 2011)

19   (awarding maximum statutory damages against one set of defendants but finding that a

20   smaller award would suffice to deter a second set of defendants from engaging in further

21   infringement).  Therefore, the court awards Nite Ize statutory damages against Mr. Wong

22

1    of one-and-a-half times Mr. Wong's total sales of counterfeit Nite Ize products, or

2    $432,637.

3        Mr. Wong raises several arguments against an award of statutory damages.  The

4    court finds none of them persuasive.  First, Mr. Wong protests that he did not act

5    willfully and thus an award under § 1117(c)(2) is not warranted.  (Resp. at 6, 7.)  As

6    explained above, however, the court has entered default against Mr. Wong and thus

7    Plaintiffs' allegations of willful infringement are deemed true.  *Derek Andrew, Inc.*, 528

8    F.3d at 702.  Furthermore, Mr. Wong acknowledges that he failed to verify the

9    authenticity of the products he sold, fabricated invoices and other documents, and ignored

10   notices that he was selling counterfeit goods.  (Rainwater Decl. ¶ 2, Ex. A (9/21/22 Wong

11   Dep.) at 72:8-10 (acknowledging Mr. Wong made no efforts to confirm whether the

12   products he sold were authentic); *id.* at 53:18-21, 54:24-55:4, 68:22-23, 69:17-25,

13   84:14-15 (acknowledging the use of aliases, photoshopped driver's licenses, and forged

14   bank records); Rainwater Decl. ¶ 4, Ex. C (3/31/23 Wong Dep.) at 17:3-11, 20:9-23,

15   23:11-14, 81:9-82:21 (acknowledging that Mr. Wong forged invoices and disregarded

16   notices that the Nite Ize products he was selling were not authentic); *see also* Resp. at 6-7

17   (acknowledging fabricated invoices and used false credentials); *id.* at 6 (contending that

18   Mr. Wong was only "arguably negligent in not verifying authenticity").)  The court has

19   no trouble finding that Mr. Wong's infringement was willful under these circumstances.

20   *See, e.g., Atari Interactive, Inc. v. Redbubble, Inc.*, 546 F. Supp. 3d 883, 886 (N.D. Cal.

21   2021), *aff'd in part, appeal dismissed in part*, No. 21-17062, 2023 WL 4704891 (9th Cir.

22   July 24, 2023) ("A Lanham Act plaintiff alleging trademark infringement can establish

1    that defendants acted willfully by showing that . . . defendants 'willfully blinded'

2    themselves to facts that should have put them on notice that they were selling counterfeit

3    goods and infringing plaintiffs' trademarks" (quoting *SAS v. Sawabeh Info. Servs. Co.*,

4    No. 11-cv-04147-MMM (MANx), 2015 WL 12763541, at *7 (C.D. Cal. June 22,

5    2015))).

6         Second, Mr. Wong contends that Plaintiffs "cannot justify any award of statutory

7    damages" because they "have failed to substantiate their allegations of Defendants' total

8    sales revenue from the alleged infringement."  (Resp. at 8.)  Specifically, he asserts that

9    Plaintiffs' calculation of Defendants' sales is (1) based only on a "conclusory"

10   declaration filed by Elaine Haskel, Senior Risk Manager for Amazon's Counterfeit

11   Crimes Unit and (2) "flawed because it does not account for Defendants' costs of goods

12   sold."  (Resp. at 8-9; *see* Haskel Decl. ¶¶ 2 (explaining Ms. Haskel's position at

13   Amazon), 6-17 (summarizing sales made through Defendants' Amazon selling

14   accounts).)  Courts may, however, rely on declarations for proof of damages.  *See*

15   *NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 617 (9th Cir. 2016) (affirming district

16   court's reliance on plaintiff's owner's declaration when calculating damages).  And

17   statutory damages are appropriate where, as here, the defendant has not cooperated in

18   discovery that would aid the plaintiff in calculating its actual damages.  *See, e.g.*,

19   *Koninklijke Philips Elecs., N.V. v. KXD Tech., Inc.*, 347 F. App'x 275, 276 (9th Cir.

20   2009) (holding entry of default judgment for $1,000,000 in statutory damages was

21   warranted due to defendant's "ongoing failure to comply with discovery requests, which

22

1   made proof of actual damages difficult or impossible"); (*see also* 7/9/23 Order at 17

2   (discussing Mr. Wong's failure to cooperate with discovery)).[6]

3          Finally, Mr. Wong argues that Plaintiffs have not proved that he collaborated with

4   Mr. Jiang and Mr. Bao.  (Resp. at 9.)  Plaintiffs, however, have dropped their civil

5   conspiracy claim (*see* Mot. at 3 n.2), and Mr. Wong is responsible only for the statutory

6   damages assessed against him individually.  Therefore, the court awards Nite Ize

7   statutory damages of $432,637 against Mr. Wong; $78,682 against Mr. Jiang and Mr.

8   Bao, jointly and severally; and $1,083,567 against Mr. Jiang.

9   2.     Permanent Injunctive Relief

10         Plaintiffs ask the court to permanently enjoin "Defendants and their officers,

11  agents, servants, employees, and attorneys, and all others in active concert or

12  participation with them who receive actual notice of" the court's order from:

13         a.  selling counterfeit or infringing products in Amazon's stores;

14         b.  selling counterfeit or infringing products to Amazon or any Amazon
               affiliate;

15         c.  manufacturing, importing, distributing, offering to sell, or selling any
               product using Nite Ize's brand or trademarks, or which otherwise

16             infringes Nite Ize's intellectual property, in any store or in any medium;
               and

17

18         [6] Mr. Wong cites *Coach, Inc. v. Treasure Box, Inc.*, No. 3:11CV468-PPS, 2014 U.S. Dist.
    LEXIS 28713 (N.D. Ind. Mar. 6, 2014), to support his contention that the court cannot rely on

19  Ms. Haskel's declaration.  (*See* Resp. at 8.)  He asserts that the *Coach* court rejected the
    plaintiff's calculation of damages as "based solely on [a] 'conclusory' declaration."  (*Id.*)  In that

20  case, the court rejected Plaintiffs' request for $1.5 million in statutory damages after reviewing
    similar cases and observing that the infringing store had closed after selling only a handful of

21  infringing products.  *See Coach*, 2014 U.S. Dist. LEXIS 28713, at *6-12 (awarding $45,000 in
    statutory damages).  The opinion never uses the word "conclusory" and in fact relies on the

22  declaration to support its finding of at least 15 examples of infringed trademarks.  *Id.* at *2,
    *11-12 (awarding statutory damages of $3,000 per mark).

1        d. assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities listed in (a) through (c) above.

2

3 (Prop. Order (Dkt. # 121) at 2-3; *see also* Am. Compl. at 29 (including substantially

4 similar injunction language in Plaintiffs' prayer for relief).)  The court grants Plaintiffs'

5 request in part.

6        The Lanham Act empowers courts "to grant injunctions, according to the

7 principles of equity and upon such terms as the court may deem reasonable, to prevent

8 the violation of any right of the registrant of a mark."  15 U.S.C. § 1116(a).  A plaintiff

9 seeking a permanent injunction must demonstrate:

10        (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury;

11        (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest

12        would not be disserved by a permanent injunction.

13 *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) (interpreting similar

14 language in considering a motion for permanent injunctive relief under the Patent Act).

15 "Generally, an injunction must be narrowly tailored to remedy only the specific harms

16 shown by a plaintiff, rather than to enjoin all possible breaches of the law."  *Kurth*, 2019

17 WL 3426064, at *5 (citing *Price v. City of Stockton*, 390 F.3d 1105, 1117 (9th Cir.

18 2004)).  Because Plaintiffs have not established Defendants' liability on Amazon's false

19 advertising claim (*see supra* § III.C.2.b), the court analyzes Plaintiffs' request for a

20 permanent injunction only as it pertains to Nite Ize.  *See Kurth*, 2019 WL 3426064, at *5

21 (considering only the plaintiff that brought the Lanham Act claim when evaluating

22 plaintiffs' request for a permanent injunction).

1    First, Nite Ize satisfies the first element because a plaintiff seeking a permanent

2    injunction under the Lanham Act "shall be entitled to a rebuttable presumption of

3    irreparable harm upon a finding of a [trademark] violation," 15 U.S.C. § 1116(a), and Mr.

4    Wong presents no evidence to rebut this presumption (*see generally* Resp.).

5        Second, remedies available at law are inadequate because Nite Ize alleges that

6    Defendants' infringement injured its reputation and goodwill.  (*See* Am. Compl. ¶¶ 86,

7    91.)  Harm resulting from lost customer goodwill "is neither easily calculable, nor easily

8    compensable" and thus cannot be remedied by a monetary award.  *eBay, Inc. v. Bidder's*

9    *Edge, Inc.*, 100 F. Supp. 2d 1058, 1066 (N.D. Cal. 2000) (citing *Cal. ex rel. Van De*

10   *Kamp v. Tahoe Reg'l Planning Agency*, 766 F.2d 1316, 1319 (9th Cir. 1985)).  Moreover,

11   Mr. Jiang's and Mr. Bao's failure to appear in this action suggests that their infringing

12   behavior may continue absent an injunction.  *See Amazon.com Inc. v. Robojap Techs.*

13   *LLC*, No. C20-0694MJP, 2021 WL 5232130, at *4 (W.D. Wash. Nov. 10, 2021) (so

14   holding).

15       Third, the balance of hardships supports Nite Ize.  Absent an injunction,

16   Defendants could continue to sell counterfeit Nite Ize products, which would cause

17   continuing harm to Nite Ize.  On the other hand, because Defendants never had a right to

18   infringe Nite Ize's trademarks in the first place, they will suffer no harm from an

19   injunction prohibiting unlawful infringement in the future.  *See, e.g.*, *Eve Nev., LLC v.*

20   *Derbyshire*, No. C21-0251LK, 2022 WL 279030, at *9 (W.D. Wash. Jan. 31, 2022)

21   (finding the balance of hardships favored plaintiffs because the defendant "would suffer

22   no injury other than refraining from her infringing conduct").

ORDER - 22

1        Finally, entering a permanent injunction would serve the general public's interest

2  in protecting trademark holders' rights and minimizing the confusion caused by the

3  presence of counterfeit products in the marketplace.  *See Treemo, Inc. v. Flipboard, Inc.*,

4  53 F. Supp. 3d 1342, 1368 (W.D. Wash. 2014) ("[I]njunctive relief serves the public

5  interest by protecting the rights of trademark holders against infringement and also

6  minimizing consumer confusion."); *Internet Specialties W., Inc. v. Milon-DiGiorgio*

7  *Enters., Inc.*, 559 F.3d 985, 993-94 (9th Cir. 2009) ("The essence of trademark

8  infringement is the likelihood of confusion, and an injunction should be fashioned to

9  prevent just that.").  The court concludes, therefore, that a permanent injunction

10  prohibiting Defendants from "manufacturing, importing, distributing, offering to sell, or

11  selling" counterfeit Nite Ize products is warranted.

12        Because Amazon has failed to state a claim, however, the injunction Plaintiffs

13  seek is overbroad.  Plaintiffs ask the court, in part, to enjoin Defendants from "selling

14  counterfeit or infringing products in Amazon's stores" and "selling counterfeit or

15  infringing products to Amazon or any Amazon affiliate" (Prop. Order at 2-3), but

16  Plaintiffs have stated trademark claims only on behalf of Nite Ize (*see supra* § III.C.2).

17  Thus, Plaintiffs' request to restrain Defendants from conduct on Amazon that does not

18  relate to the Nite Ize Trademarks "does more than remedy the specific harm at issue."

19  *Kurth*, 2019 WL 3426064, at *6 (modifying proposed injunction against "opening any

20  Amazon Seller Accounts or otherwise selling products on any of Amazon's websites" as

21  overbroad and limiting it to counterfeit products); *White*, 2022 WL 1641423, at *7

22  (same).  To cure this overbreadth, the court strikes paragraphs (a) and (b) from Plaintiffs'

ORDER - 23

1  proposed permanent injunction and enjoins "Defendants and their officers, agents,

2  servants, employees, and attorneys, and all others in active concert or participation with

3  them who receive actual notice of" this order from (a) "manufacturing, importing,

4  distributing, offering to sell, or selling any product using Nite Ize's brand or trademarks,

5  or which otherwise infringes Nite Ize's intellectual property, in any store or in any

6  medium" and (b) "assisting, aiding, or abetting any other person or business entity in

7  engaging in or performing any of the activities listed" in paragraph (a) above. (*See* Prop.

8  Order at 2-3.)

9       Again, Mr. Wong raises several objections to Plaintiffs' requested remedy.  First,

10  he asserts that an injunction is unnecessary because he has "unequivocally stated that he

11  does not intend to create any new accounts or sell any additional products on Amazon."

12  (Resp. at 9.)  This assertion, however, is moot because the court has struck the provisions

13  that apply solely to Amazon from the proposed injunction.  In any event, the proposed

14  injunction as drafted would have only prohibited Defendants from selling counterfeit or

15  infringing products; it would not have prohibited Defendants from using Amazon

16  altogether.  (*See* Prop. Order at 2-3.)

17       Second, Mr. Wong argues that the injunction is overbroad because it seeks to

18  "enjoin individuals and entities who are not parties to this case and who have not been

19  found liable for any wrongdoing."  (Resp. at 3.)  He asserts that the court should narrowly

20  tailor any injunction so that it applies only to him.  (*Id.* at 3, 9.)  Federal Rule of Civil

21  Procedure 65(d)(2), however, expressly provides that an injunction is binding upon "the

22  parties," "the parties' officers agents, servants, employees, and attorneys," and "other

1  persons who are in active concert or participation with anyone" in this list, provided they

2  "receive actual notice of [the order] by personal service or otherwise."  Fed. R. Civ. P.

3  65(d)(2).  The scope of Plaintiffs' proposed injunction echoes this language.  (*See* Prop.

4  Order at 2.)

5        Finally, Mr. Wong contends that Plaintiffs "cannot show a risk of irreparable

6  future injury necessary to warrant the extraordinary remedy of an injunction against Mr.

7  Wong at this stage" because he stopped infringing Nite Ize's trademarks four years ago

8  (Resp. at 9-10 (citing *Herb Reed Enters., LLC v. Fla. Ent. Mgmt., Inc.*, 736 F.3d 1239,

9  1249 (9th Cir. 2013)).)  In 2020, however, Congress amended § 1116(a) to "expressly

10  allow a presumption of irreparable injury when the owner of a trademark proves

11  likelihood of success on the merits."  *See Trial Laws. Coll. v. Gerry Spence Trial Laws.*

12  *Coll. at Thunderhead Ranch*, 23 F.4th 1262, 1270 (10th Cir. 2022) (discussing the

13  amendment to § 1116(a)).  Mr. Wong presents no facts to rebut that presumption.  (*See*

14  *generally* Resp.)  Therefore, the court GRANTS Plaintiffs' request for a permanent

15  injunction to the extent it relates to Defendants' infringement of Nite Ize's trademarks

16  and DENIES the request to the extent it relates to Defendants' use of Amazon.

17        **IV.   CONCLUSION**

18        For the foregoing reasons, the court GRANTS in part and DENIES in part

19  Plaintiffs' motion for default judgment (Dkt. # 117).  Specifically, the court ORDERS as

20  follows:

21

22

1.     The court GRANTS default judgment against Defendants on Nite Ize's trademark infringement claim under 15 U.S.C. § 1114 and false designation of origin claim under 15 U.S.C. § 1125(a).

2.     The court AWARDS Nite Ize statutory damages pursuant to 15 U.S.C. § 1117(c)(2) for Defendants' willful violations of the Lanham Act as follows:

     a.  $432,637 against Mr. Wong for counterfeit sales of Nite Ize products from the following Amazon selling accounts:  VERY LEE GOOD; HALL HALL HALL; MAX MAX MAX; Vincent's Store 789; ZACKSALES; DEROSAN, Samonite, Mentushop; Lucky Deals JMS; and Storqq;

     b.  $78,682 against Mr. Jiang and Mr. Bao, jointly and severally, for counterfeit sales of Nite Ize products from the porterg Amazon selling account; and

     c.   $1,083,567 against Mr. Jiang for counterfeit sales of Nite Ize products from the TKONA and JS Wholesaler Amazon selling accounts.

3.     The court ENJOINS and RESTRAINS Defendants and their officers, agents, servants, employees, and attorneys, and all others in active concert or participation with them who receive actual notice of this order from:

     a.  manufacturing, importing, distributing, offering to sell, or selling any product using Nite Ize's brand or trademarks, or which otherwise infringes Nite Ize's intellectual property, in any store or in any medium; and

     b.  assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities listed in paragraph (a) above.

4.     The court DENIES default judgment against Defendants on Amazon's false advertising claim under 15 U.S.C. § 1125(a) and DISMISSES that claim without prejudice.

1       5.     Amazon's breach of contract claim and Plaintiffs' civil conspiracy claim

2    are DISMISSED without prejudice.  (*See* Mot. at 3 n.2 (voluntarily dismissing these

3    claims)); Fed. R. Civ. P. 41(a)(2).

4       6.     The court retains jurisdiction over this case for the purpose of enforcing this

5    order and injunction and for any supplemental pleadings that may be authorized by law.

6       7.     Plaintiffs' counsel are DIRECTED to serve a copy of this order and

7    injunction on Defendants' last known email addresses registered with Amazon.

8       Dated this 12th day of February, 2024.

JAMES L. ROBART
United States District Judge

ORDER - 27